UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION at COVINGTON


CIVIL ACTION NO. 08-71-GWU


WILLIAM J. COLEMAN,                                              PLAINTIFF,


VS.                          **MEMORANDUM OPINION**


MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                    DEFENDANT.


## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of his application for Disability Insurance Benefits (DIB).  The appeal is

currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.     Is the claimant currently engaged in substantial gainful activity?
       If yes, the claimant is not disabled.  If no, proceed to Step 2.
       See 20 C.F.R. 404.1520(b), 416.920(b).

2.     Does the claimant have any medically determinable physical
       or mental impairment(s)?  If yes, proceed to Step 3.  If no, the
       claimant is not disabled.  See 20 C.F.R. 404.1508, 416.908.

3.     Does the claimant have any severe impairment(s)--i.e., any
       impairment(s) significantly limiting the claimant's physical or
       mental ability to do basic work activities?  If yes, proceed to
       Step 4.  If no, the claimant is not disabled.  See 20 C.F.R.
       404.1520(c), 404.1521, 416.920(c), 461.921.

1

08-71  William J. Coleman

4.     Can the claimant's severe impairment(s) be expected to result
       in death or last for a continuous period of at least 12 months?
       If yes, proceed to Step 5.  If no, the claimant is not disabled.
       <u>See</u> 20 C.F.R. 404.920(d), 416.920(d).

5.     Does the claimant have any impairment or combination of
       impairments meeting or equaling in severity an impairment
       listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of
       Impairments)?  If yes, the claimant is disabled.  If no, proceed
       to Step 6.   <u>See</u> 20 C.F.R. 404.1520(d), 404.1526(a),
       416.920(d), 416.926(a).

6.     Can the claimant, despite his impairment(s), considering his
       residual functional capacity and the physical and mental
       demands of the work he has done in the past, still perform this
       kind of past relevant work?  If yes, the claimant was not
       disabled.  If no, proceed to Step 7.   <u>See</u> 20 C.F.R.
       404.1520(e), 416.920(e).

7.     Can the claimant, despite his impairment(s), considering his
       residual functional capacity, age, education, and past work
       experience, do other work--i.e., any other substantial gainful
       activity which exists in the national economy?  If yes, the
       claimant is not disabled.   <u>See</u> 20 C.F.R. 404.1505(a),
       404.1520(f)(1), 416.905(a), 416.920(f)(1).

<u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1984).

       Applying this analysis, it must be remembered that the principles pertinent

to the judicial review of administrative agency action apply.   Review of the

Commissioner's decision is limited in scope to determining whether the findings of

fact made are supported by substantial evidence.  <u>Jones v. Secretary of Health and</u>

<u>Human Services</u>, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial

evidence" is "such evidence as a reasonable mind shall accept as adequate to

2

08-71  William J. Coleman

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight.  <u>Garner</u>, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  <u>Bowie v. Secretary</u>, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  <u>Cf. Houston v. Secretary of Health and Human Services</u>, 736 F.2d 365, 367 (6th Cir. 1984); <u>King v. Heckler</u>, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  <u>Hardaway v. Secretary</u>, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  <u>Jones</u>, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 C.F.R. § 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the

3

08-71  William J. Coleman

alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id.  Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

4

08-71  William J. Coleman

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).   However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

5

if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert

6

accurately portrays the plaintiff's physical and mental impairments.  <u>Varley  v.
Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

**DISCUSSION**

The plaintiff, William J. Coleman, a 64-year-old man with an eleventh grade
education and work experience as a grocery store manager, was found by an
Administrative Law Judge (ALJ) to have "severe" impairments consisting of
depression, a cognitive disorder, dizziness, and lightheadedness.   (Tr.  19).
Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ
determined that Mr. Coleman retained the residual functional capacity to perform
a significant number of jobs existing in the economy, and therefore was not entitled
to benefits.  (Tr. 20-2).  The Appeals Council declined to review, and this action
followed.

At the administrative hearing, the ALJ asked the VE whether a person of the
plaintiff's age, education, and work experience could perform any jobs if he had no
exertional restrictions, but would be limited to understanding, remembering, and
carrying out simple, one-two step job instructions, performing routine, repetitive
tasks, avoiding a constantly rapid pace, having only superficial interactions with
coworkers, supervisors, and the public, needing to avoid working around dangerous
machinery and unprotected heights and needing to avoid climbing ladders, ropes,
and scaffolds.  (Tr. 292-5).  The VE responded that there were jobs that such a

person could perform, and proceeded to give the numbers in which they existed in the regional and national economies.  (Tr. 294-6).

On appeal, this court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

Mr. Coleman alleged disability due to difficulty concentrating and poor decision-making.  (Tr. 80).  He testified that he had stopped working in his long-time grocery store job because he was making bad decisions and the owner of the store confronted him about it.  (Tr. 265).  He also described lack of motivation and interest in activities, as well as a physical problem with poor balance and dizziness.  (Tr. 269).  His doctors had not decided the cause of the problem.  (Tr. 270).  He admitted to drinking daily at the time his memory and decision-making problems became apparent, but did not think that had anything to do with his problem; he was not currently drinking and was attending Alcoholics Anonymous meetings regularly.  (Tr. 268-9, 288).

The plaintiff's primary allegation on appeal is that the ALJ did not properly develop the record regarding his mental impairment, but the evidence contains numerous psychiatric, psychological, and neurological examinations.

Dr. Daniel Gripshover, a neuropsychologist, examined Mr. Coleman on several occasions in 2003 for complaints of impaired memory and possible early dementia.  (Tr. 116).  Mr. Coleman also stated that he was depressed and irritable.

(Id.).  However, he scored 27 out of 30 on the Mini Mental Status Evaluation.  Dr. Gripshover found that his working memory was average, and he had a good ability to learn new auditory information, although there was some variation in his recall of visual information.  (Tr. 118).  He endorsed a large number of vague somatic concerns.  (Tr. 121).  Dr. Gripshover concluded that Mr. Coleman's performance on objective measures of cognitive testing was not consistent with known organically-based neurological disorders, and that psychological factors likely played a significant role in his perceived neurologic function.  (Id.).  He diagnosed recurrent severe major depression, a cognitive disorder, and a somatization disorder, with a Global Assessment of Functioning (GAF) score of 51-60.  (Tr. 122).  GAF scores in this range reflect "moderate" functional limitations.  Diagnostic and Statistical Manual of Mental Disorders (4th Ed.--Text Revision) (DSM-IV-TR), p. 34.

Dr. Helen Holtman, a psychiatrist, treated the plaintiff between June and December, 2003.  At the initial office visit, slightly before the plaintiff stopped working, Dr. Holtman diagnosed major depression, "rule out" mild dementia with a depressed mood, and "rule out" alcohol abuse and dependence.  (Tr. 142).  She assessed a current GAF score of 50 to 65, reflecting serious to moderate symptoms according to the DSM-IV-TR, with the highest GAF score in the past year being 65, reflecting only mild symptoms.  (Id.).  Various antidepressants were tried, but the plaintiff complained of side effects.  (E.g., Tr. 148).  Dr. Holtman eventually prescribed the medication Remeron, and Mr. Coleman stated that he was beginning

to feel better at the time of his last visit in December, 2003, but decided to terminate services in order to have therapy closer to home.  (Tr. 152).

Psychiatrist Augustina Baluyot examined the plaintiff in September, 2004. Mr. Coleman stated he was aware of having been depressed since losing his job in November, 2003, following an argument with his boss which caused him to impulsively quit.  (Tr. 175).  He stated he had always been explosive and impulsive with his decisions, and drank alcohol for relaxation and to help him sleep.  (Id.).  He reported that he had stopped drinking on February 3, 2004 and had been sober ever since.  (Tr. 176).  He had memory lapses, and had been treated by his family doctor with different antidepressants.  The psychiatrist noted that Mr. Coleman tended to give a conflicting history and used denial and minimizing; she felt he lacked judgment and insight.  (Tr. 177-8).  She listed impressions of chronic major depression, a possible bipolar disorder, alcohol problems, a personality disorder, and a marital disorder.  (Tr. 177).  She planned to increase his level of Zoloft to an effective level.  (Tr. 179).  The plaintiff subsequently reported to a registered nurse practitioner that a combination of Zoloft and Triavil seemed to be working for him with no side effects.  (Tr. 174).

Mr. Coleman underwent a consultative psychological evaluation by Teri Caudill, a psychologist, on November 12, 2004.  Dr. Caudill also reviewed the report from Dr. Gripshover.  He complained of memory problems, poor concentration, and difficulty with comprehension.  (Tr. 185).  He described a problem with depression

08-71  William J. Coleman

predating his alleged onset date.  (Tr. 186).  He again asserted that he had not

consumed alcohol since February, 2004, and opined that it had never had any

repercussions on his employment or personal relationships in any case.  (Tr. 187).

Although Mr. Coleman described being suspicious of others, he denied ever having

any trouble getting along with other people on the job.  (Tr. 186-7).  His activities

included driving, being able to complete all household chores and personal care

needs, and said his typical day involved doing housework and taking walks.  (Tr.

188).  He stated that his problems with comprehension were such that he could not

read.  (Id.).  Dr. Caudill diagnosed major depression and a cognitive disorder, with

a GAF of 60.  (Tr. 189).  In terms of specific restrictions, she felt that Mr. Coleman

would have a "moderately to markedly" impaired ability to attend and follow through

on complex tasks, a "moderately" impaired ability to respond to day-to-day work

pressures, a "mildly to moderately" impaired ability to interact effectively with others,

and only a "mildly" impaired ability to understand and remember simple instructions

and make judgments.  (Tr. 190).

Although there are further treatment notes from family physicians reflecting

treatment for some fairly minor physical problems such as hypertension, which was

controlled with medication, as well as prescriptions for antidepressant medications,

there are no specific restrictions given by these sources, and one of them, Dr.

Susan Fremont, even indicated that he had no evidence of depression as of

February, 2007.  (Tr. 228).

11

08-71  William J. Coleman

A neuropsychiatric examination was conducted by Dr. Brett Kissela on referral from Dr. Fremont in October, 2006.  (Tr. 233).  No records were available for review but Mr. Coleman related his complaints of cognitive difficulties as well as dizziness and lightheadedness.  (Id.).  He was not being treated for depression currently, although stating that he was still depressed.  Dr. Kissela reported that Mr. Coleman could not describe his complaints of lightheadedness in detail at first, although it then became clear that he was having difficulty with slurring his speech at times and even writing coherently, as well as with his concentration, memory, and balance.  (Tr. 233-4).  Mr. Coleman noted that he had been on a combination of Perphenazine and Elavil for years, and a recent increase in dosage had not helped.  (Tr. 234).  His neurological examination was normal, and Dr. Kissela thought that his problems might be due to the sedating effects of his medication, or alcohol abuse.  He recommended psychiatric follow-up, but did not list any functional restrictions.  (Tr. 235).

In view of the extent and detail of these reports, the court cannot agree that the Commissioner was under an obligation to obtain another consultative evaluation.  20 C.F.R. § 404.1517 states that the Commissioner may purchase a consultative examination if a claimant's medical sources cannot or will not provide sufficient medical evidence to determine disability. It does not require the Commissioner to purchase such an examination, and, in any case, such an examination had been made by Dr. Caudill.  The hypothetical factors selected by

12

the ALJ are consistent with Dr. Caudill's conclusions, and there is no clear evidence of greater restriction from any of the other treating or examining sources, with the isolated exception of some GAF scores which may have been linked to alcohol abuse, an impermissible basis for finding disability.  Ultimately, it is the plaintiff's responsibility to prove his own case. Born v. Secretary of Health and Human Services, 923 F.2d 1168, 1173 (6th Cir. 1990).  Mr. Coleman appears to have employed a "disability representative" during the administrative proceedings (e.g., Tr. 35, 250-2), but even if he had been unrepresented, the court believes that the defendant fully and fairly developed the record as required by Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).

The plaintiff's other argument was that the hypothetical was incomplete because it did not take into account negative portions of the evidence, such as those documenting balance problems, dizziness, lightheadedness, side effects of medications, hypertension, and significant memory, confusion, and concentration problems. Memorandum in Support of Summary Judgment, Docket Entry No. 6-2, p. 15.  On the contrary, however, as previously noted, the ALJ found that the plaintiff's depression, cognitive disorder, dizziness, and lightheadedness were "severe" impairments.  He adopted restrictions consistent with the only clear limitations on mental functioning, as given by Dr. Caudill, and which were also consistent with the statement of Dr. Baluyot that his depressive symptoms "may" cause problems coping with stress at work.  The ALJ also gave the plaintiff the

13

08-71  William J. Coleman

benefit of the doubt in restricting him from climbing and working around dangerous machinery and unprotected heights, in order to account for his dizziness and lightheadedness complaints, even though no physician placed any specific restrictions on him in this regard.  Accordingly, the plaintiff's contentions are without merit.

The decision will be affirmed.

This the 6th day of February, 2009.

**Signed By:**

**G. Wix Unthank**

**United States Senior Judge**

14